# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | | |
|---|---|---|
| In re: | \| | **Chapter 13** |
| | \| | |
| **MICHAEL DOUGLAS PERROW and** | \| | **Case No. 09-61234** |
| **BRANDY BOWLING PERROW,** | \| | |
| | \| | |
| _____Debtors._ | \| | |
| **HERBERT L. BESKIN, Chapter 13** | \| | |
| **Trustee,** | \| | |
| | \| | |
| **and** | \| | |
| | \| | |
| **MICHAEL DOUGLAS PERROW and** | \| | |
| **BRANDY BOWLING PERROW,** | \| | |
| **Debtors,** | \| | |
| | \| | |
| **Plaintiffs,** | \| | |
| | \| | |
| **v.** | \| | **Adversary Proceeding No. 11-06082** |
| | \| | |
| **THE BANK OF NEW YORK MELLON** | \| | |
| **c/o BAC HOME LOAN SERVICING LP** | \| | |
| **fka COUNTRYWIDE HOME LOANS,** | \| | |
| **INC.,** | \| | |
| | \| | |
| **and** | \| | |
| | \| | |
| **CTC REAL ESTATE SERVICES, INC.,** | \| | |
| | \| | |
| _____Defendants._ | \| | |

## MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

At Lynchburg in said District this 5th day of September, 2013:

Before the Court are cross motions for summary judgment. The question the Court must answer is whether a Chapter 13 Trustee's strong arm powers under section 544(a)(3) may defeat an unrecorded deed of trust or whether equitable remedies may block the trustee's powers.

**THE PARTIES**

Herbert L. Beskin, Chapter 13 Trustee (the "Trustee), and Michael and Brandy Perrow (the "Debtors") (collectively, the "Plaintiffs") filed a complaint against BAC Home Loan Servicing LP (the "Defendant") and CTC Real Estate Services, Inc. (the "Third-Party Defendant") (collectively, the "Defendants"). The Plaintiffs seek avoidance under 11 U.S.C. § 544(a)(3) of Defendant's alleged interest in Debtors' real property and disallowance of Defendant's proof of claim under 11 U.S.C. 502.[1] The Defendants' assert a counterclaim and a third party claim seeking six grounds of equitable relief, namely:  declaratory judgment, equitable subrogation, specific performance, constructive trust, equitable lien, and relief under 11 U.S.C. § 105 (the "Counterclaim").[2]

**PROCEDURAL POSTURE AND BACKGROUND**

On April 22, 2009, the Debtors filed for Chapter 13 relief. The Debtors' listed Defendant as an unsecured creditor on Schedule F.[3] The Debtors explained on Schedule A[4] why Defendant was listed as unsecured. On July 2, 2009, the Debtors filed an amended Chapter 13 plan. The Debtors' amended plan listed Defendant as unsecured and proposed to pay Defendant a two percent dividend. Defendant never objected to the amended plan. The Debtors' amended plan

---

[1]      There is some confusion as to whether the Plaintiffs' Complaint seeks relief under section 544(a)(3) only or whether the Complaint incorporates section 544(a)(1) as well. *Compare* Plaintiffs' Amended Complaint, *Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 18 *with* Defendants' Memorandum in Support of Motion for Summary Judgment at p. 7, *Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 44. After reviewing the Complaint, the Court finds that Plaintiffs attempted to rely solely on section 544(a)(3). As such, the Court will not address the Trustee's powers under section 544(a)(1).

[2]      Defendants' Counterclaim asserts the equitable remedies alleged prevent the Plaintiffs from succeeding under 11 U.S.C. § 544(a). Defendants' Counterclaim and Third-Party Claim at ¶ 19, *Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 22.

[3]      Schedule F reports creditors holding unsecured, non-priority claims. *See* Official Form B-6F (12/07) Fed. Rule 1007(b).

[4]      Schedule A reports real property held by a debtor. *See* Official Form B-6A (12/07) Rule 1007(b).

2

was confirmed as proposed on September 17, 2009. On September 24, 2009, Defendant filed a proof of claim as a secured creditor. The deadline for filing claims was August 17, 2009.

On August 15, 2011, the Plaintiffs initiated this adversary proceeding to avoid Defendant's unrecorded deed of trust. Defendants later added the Third-Party Defendant as a necessary party. On October 15, 2011, the Plaintiffs filed an amended complaint (the "Complaint"), which is the basis of the matter for decision before the Court. The Complaint seeks to avoid Defendant's unrecorded deed of trust under 11 U.S.C. § 544(a)(3) and asks that the Court to disallow Defendant's proof of claim as untimely.[5] Defendants answered the Complaint and asserted as affirmative defenses[6] six grounds of equitable relief to Plaintiff's Complaint – declaratory judgment, equitable subrogation, specific performance, constructive trust, equitable lien, and relief under 11 U.S.C. § 105.[7]

On January 27, 2013, Defendant filed a motion for summary judgment on Plaintiffs' Complaint. Plaintiffs followed suit and filed a motion for summary judgment on their Complaint on February 25, 2013. On that same day, Defendant filed a supplemental motion for summary judgment on its Counterclaim. After hearings on March 14, 2013, and April 25, 2013, the matter was taken under advisement.

### FACTS

The facts of this case are minimal and undisputed. On September 20, 2004, the male debtor entered into a loan (the "2004 Loan") with Charter Capital (the "Third-Party Defendant")

---

[5]      Plaintiffs' Amended Complaint, *In re Perrow*, No. 11-06082, ECF No. 18.

[6]      Defendants' Answer to Plaintiffs' Complaint incorporates the counts of Defendants' Counterclaim as affirmative defenses to Plaintiffs' requested relief.  Defendants' Answer at p. 3, *Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 21.

[7]      Defendants' Counterclaim and Third-Party Claim, *In re Perrow*, No. 11-06082, ECF No. 22.

for $133,299. The 2004 Loan was secured by a deed of trust (the "2004 DoT") on the male

debtor's real property. The 2004 DoT was properly recorded October 20, 2004.

On July 20, 2005, the male debtor deeded by gift his real property to himself and the

female debtor as tenants by the entirety. The deed of gift was properly recorded on August 2,

2005.

Debtors entered into a refinance loan (the "2006 Loan") with another bank on June 12,

2006, in the amount of $184,500, repayment of which was secured by a deed of trust (the "2006

DoT") on Debtors' real property. The 2006 DoT was properly recorded on July 24, 2006. The

proceeds from the 2006 Loan were used to pay off the 2004 Loan, but the Third-Party Defendant

never recorded a release of its 2004 DoT.

On May 15, 2007, the Debtors entered into a refinance loan (the "2007 Loan") with BAC

Home Loan Servicing LP, fka Countrywide Home Loans, Inc. (the "Defendant") for $197,900,

the repayment of which was secured by a deed of trust (the "2007 DoT") on the Debtors' real

property. The 2007 DoT was never recorded and has since been lost, misplaced, or destroyed.

The proceeds from the 2007 Loan were used to pay off the 2006 Loan and a release of the 2006

DoT was properly recorded on July 2, 2007.

On April 22, 2009, the Debtors filed for bankruptcy relief under Chapter 13 of Title 11.

The Debtors' Chapter 13 plan was confirmed on September 17, 2009. The Defendant never filed

an objection to the plan. After confirmation of the plan, on September 24, 2009, Defendant filed

a proof of claim as a secured creditor in Debtors bankruptcy case. Subsequently, the Trustee with

Debtors jointly filed this adversary proceeding under 11 U.S.C. § 544(a) seeking to avoid

Defendant's unrecorded deed of trust.

4

## JURISDICTION AND THE COURT'S AUTHORITY

This adversary proceeding is a civil proceeding arising in a case filed under Title 11 of the United States Code. Specifically, the plaintiffs in this adversary proceeding are the Chapter 13 Trustee and the Chapter 13 debtors, and the defendants are creditors of the Debtors. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under the Bankruptcy Code because it is a proceeding to determine the Chapter 13 Trustee's ability to use his "strong-arm" powers under Section 544 of the Bankruptcy Code and to determine the extent, priority, and validity of an alleged lien under Section 506 of the Bankruptcy Code. 28 U.S.C. §§ 157(b)(2)(B) and (K). This Bankruptcy Court can hear this matter pursuant to 28 U.S.C. § 157(b)(1) and the Western District of Virginia District Court Order of Reference.[8]

### Constitutional Authority and the *Stern v. Marshall* Opinion

In *Stern v. Marshall*, the Supreme Court found that a bankruptcy court may have statutory authority to hear a "core proceeding" under 28 U.S.C. § 157, yet not Constitutional authority to issue a final judgment in that proceeding. 131 S. Ct. 2594, 2608 (2011). In *Stern*, the Supreme Court determined that a bankruptcy court could not issue a final ruling on a state law counterclaim against a non-creditor third party even if the counterclaim was a core proceeding. *Id*. at 2615. The test for whether a bankruptcy court has constitutional authority to enter a final judgment is "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id*. at 2618.

The Defendants have requested summary judgment on multiple state law counterclaims. Some of these counterclaims do not stem from the bankruptcy itself, but ultimately impact the

---

[8]     Western District of Virginia District Court Order of Reference December 6, 1994; Western District of Virginia District Court Local Rule 3.

claim allowance process. The Counterclaim lists several equitable remedies, all of which allegedly allow the Defendant to claim an interest or lien in the Debtors' real property superior to that of the Trustee's interest under section 544(a)(3). If, however, the Defendant does not have a valid interest or lien, or the Trustee is able to avoid Defendant's interest, then the Defendant may not have an allowed secured claim. 11 U.S.C. § 506(a). As a consequence, Defendant may have an unsecured claim. *Id.* As an unsecured creditor, Defendant's proof of claim would be susceptible to disallowance as untimely because Defendant's proof of claim was filed thirty-eight days after the bar date. 11 U.S.C. §§ 501 and 502. Plaintiffs' Complaint specifically requests such relief. The equitable remedies put forth by Defendants in the Counterclaim are, therefore, necessary to the claims allowance process because they will ultimately determine whether Defendants' claim is secured and allowed or unsecured and, potentially, disallowed. *Stern*, 131 S.Ct. at 2618. Furthermore, to the extent the Counterclaim asserts affirmative defenses to the Trustee's ability to exercise his strong-arm power, they stem from the bankruptcy itself. *Id.* The Court concludes that it has authority to issue a final ruling on all matters currently before it.

## CONCLUSIONS OF LAW

### Summary Judgment

This matter comes before the Court on cross motions for summary judgment on Plaintiffs' Complaint and Defendants' motion for summary judgment on counts II through VI of their Counterclaim. On motions for summary judgment, the Court must apply a different standard of review than it would on the merits of the case at trial. The Fourth Circuit has summarized the standard:

> Summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Facts are material when they might affect the outcome of the case, and a

genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial. In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. To overcome a motion for summary judgment, however, the nonmoving party may not rely merely on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial.

*News and Observer Publishing Co. v. Raleigh-Durham Airport*, 597 F.3d 570, 576 (4th Cir. 2010) (internal citations and quotations omitted) (summarizing Supreme Court precedents). A party may move for full or partial summary judgment on any claim or defense. *See* FED. R. CIV. P. 56(a) (made applicable by FED. R. BANKR. P. 9056). *See also* 11-56 MOORE'S FEDERAL PRACTICE - Civil ¶ 56.02.

With this standard in mind, the Court will address the cross motions for summary judgment and Defendants' motion for summary judgment on counts II through VI of their Counterclaim. The Court will address the matters out of turn. First, the Court will address Defendants' motion for summary judgment on Plaintiffs' Complaint. Next, the Court will address the Trustee's status as a *bona fide* purchaser of real property under section 544(a)(3), which Plaintiffs have raised as grounds for granting their Complaint. After that, the Court will address the Defendants' supplemental motion for summary judgment on their Counterclaim, which alleges equitable remedies and is incorporated in Defendants' answer as affirmative defenses to the Plaintiffs' Complaint. Last, the Court will address Plaintiffs' motion for summary judgment on their Complaint.

## "Strong Arm" Powers of the Trustee under Section 544(a)

Section 544(a) of the Bankruptcy Code grants the trustee "the rights and powers of, or [the ability to] avoid any transfer of property of the debtor or any obligation incurred by the

debtor that is voidable by" certain creditors or a bona fide purchaser of real property. 11 U.S.C. § 544(a). Section 544(a) is most often invoked by Chapter 7 trustees in a Chapter 7 case. *See* 11 U.S.C. § 704 (charging the Chapter 7 trustee with the potential liquidation of the estate for the benefit of unsecured creditors). The trustee's strong arm powers under section 544(a), however, are not exclusive to Chapter 7 trustees. Section 103(a) of the Code makes section 544(a) applicable in a Chapter 13 case. *See* 11 U.S.C. § 103(a). As such, a Chapter 13 trustee may appear and invoke the strong arm powers under section 544(a) to avoid a creditor's interest just as a Chapter 7 trustee would, despite the fact that a Chapter 13 trustee's interests in the case may differ from those of a Chapter 7 trustee's.  *Compare* 11 U.S.C. § 704 *with* 11 U.S.C. § 1302.

<u>Standing to Bring Suit under Section 544(a)</u>

The ability of the Chapter 13 trustee to bring an action under section 544(a) on behalf of or with a particular debtor is relevant in this case because the entirety of Defendants' motion for summary judgment on Plaintiffs' Complaint rests on the assertion that it is Debtors, not the Trustee, who are the party bringing this action. Defendants' motion for summary judgment ignores the fact that the Trustee is a plaintiff in this action.[9] Defendants have attempted to shoehorn the Debtors as the real party bringing this action in an attempt to make the Debtors' knowledge of the 2007 DoT a factor disqualifying Plaintiffs' claim under section 544(a)(3).

Defendants rely on *Freeman v. Eli Lilly Fed. Credit Union (In re Freeman)*, 72 B.R. 850 (Bankr. E.D.Va. 1987) for the proposition that it is the debtor, not the Chapter 13 trustee, who has standing to bring suit under section 544(a). In particular, the Defendants rely on the conclusion from *Freeman*, in which the court stated, "it is only logical that [the Chapter 13 debtor] should be extended the powers possessed by the trustee which work toward enhancing

---

[9]   *See generally* Defendants' Memorandum in Support of Motion for Summary Judgment, *In re Perrow*, No. 11-06082, ECF No. 44.

8

their own bankruptcy estate." *Freeman*, 72 B.R. at 854. Such a statement, however, does not lead

to the conclusion that a Chapter 13 debtor has exclusive standing to bring a section 544(a) action.

Rather, analysis of the Code leads to the contrary conclusion: a Chapter 13 debtor may only

bring a section 544(a) action after the Chapter 13 trustee fails to do so. *See* 11 U.S.C. § 522(h)

(made applicable to a Chapter 13 debtor by 11 U.S.C. § 103(a)). Section 544(a) explicitly grants

certain powers and rights to the trustee without mention of any other party in interest. *See* 11

U.S.C. § 544(a) ("The trustee shall have … ."). A statutory provision that designates a particular

party empowered to act in a particular way is the least appropriate in which to presume

nonexclusivity as to who may act.  *Hartford Underwriters Insurance Comp. v. Union Planters*

*Bank,* 120 S.Ct. 1942, 1947 – 48 (2000) (disqualifying a party-in-interest from bringing a §

506(c) action because § 506(c) exclusively grants such power to the trustee) (citing 11 U.S.C. §

544(a) as example where exclusivity is presumed). In the case of section 544(a), Congress chose

in section 522(h) to allow the debtor to step into the shoes of the trustee for certain avoidance

actions under limited circumstances. *Cf. Osting v. Blockberger (In re Osting)*, 337 B.R. 297, 306

(Bankr. N.D. OH 2005) (citing *Hartford Underwriters*) (finding that where Congress intends for

a provision to be non-exclusive, it knows how to say so); *Mitrano v. United States (In re*

*Mitrano)*, 468 B.R. 795, 801 – 02 (Bankr. E.D. Va. 2012) (calling into question the precedential

value of *Freeman* in light of the holdings in *Osting* and *Hartford Underwriters*). As such,

Defendants' conclusion that the Debtors have exclusive standing to bring this action is inapposite

to the provisions of the Code. The Trustee has standing to bring this action under section 544(a)

and is the real party in interest in this action.

<u>The Trustee's Knowledge under Section 544(a)</u>

As the real party in interest, it is the Trustee's knowledge as a hypothetical *bona fide* purchaser of real property under subsection (a)(3) that is at issue in this matter. Whatever actual knowledge the Trustee may have regarding the interest he or she is attempting to avoid under section 544(a) is disregarded. *See* 11 U.S.C. § 544(a) ("The trustee shall have … and without regard to any knowledge of the trustee or of any creditor, the rights and powers of … ."). To impute to a trustee the actual knowledge a debtor may have regarding an interest the trustee is attempting to avoid under section 544(a) would strip section 544(a) of any meaningful impact. Under section 544(a), the trustee's powers as a hypothetical lien creditor or *bona fide* purchaser are defined by applicable state law. *Havee v. Belk*, 775 F.2d 1209, 1218 – 19 (4th Cir. 1985). Under Virginia law, a *bona fide* purchaser of real property is one who purchases real property for valuable consideration without notice of the objecting party's adverse interest in the property. VA. CODE ANN. § 55-96 (West 2013). By imputing a debtor's actual knowledge to the trustee in actions under section 544(a)(3), the trustee would lose all ability to claim the status of a hypothetical *bona fide* purchaser of real property because the trustee would almost always have actual knowledge of the underlying transaction between the debtor and the creditor that creates the interest the trustee is attempting to avoid. The Court cannot read such an absurd result into the meaning of the Code, particularly when the Code explicitly provides that the trustee's actual knowledge is to be disregarded. As such, under section 544(a), the knowledge the Court should concern itself with is the knowledge that the trustee would have as a hypothetical creditor or hypothetical *bona fide* purchaser. Imputation of the Debtors' actual knowledge to the Trustee is inappropriate and contrary to the purpose of the Code. Because Defendants' motion for summary judgment on Plaintiffs' Complaint rests entirely on the Debtors as the party bringing this action

and, therefore, the Debtors' knowledge of the transaction at issue, Defendants are not entitled to judgment as a matter of law on Plaintiffs' Complaint. Defendants' motion for summary judgment on Plaintiffs' Complaint is, therefore, denied.

### Does a Lien or Interest Exist on Debtors' Real Property that is Subject to the Trustee's Strong Arm Powers under Section 544(a)?

A central issue before the Court is whether a lien or interest exists on Debtors' real property that may be avoided by the Trustee under his section 544(a) strong arm powers. By bringing the section 544(a) action, Plaintiffs have conceded that *some* interest existed between Debtors and Defendant, but that such interest is voidable by a hypothetical *bona fide* purchaser. The extent of that interest is only relevant in so far as it relates to the Defendant's rights as to hypothetical *bona fide* purchasers, not the Debtors. It is uncontested that Debtors and Defendant entered into the 2007 Loan to refinance the 2006 Loan. Furthermore, it is uncontested that Debtors granted Defendants the 2007 DoT as security for the 2007 Loan. As between the Debtors and the Defendant, a valid, enforceable interest in Debtors' real property was created at the moment the Debtors granted Defendant the 2007 DoT. *See* VA. CODE ANN. § 55-59 (West 2013); *Hunton v. Wood*, 43 S.E. 186, 187 (Va. 1903) (finding that a deed is good as to the parties to the deed upon enactment). Although the 2007 DoT created a valid and enforceable interest between the Debtors and the Defendant, the issue in this case is whether Defendant's  interest is valid and enforceable as against a hypothetical *bona fide* purchaser of real estate under § 544(a)(3). To answer that question, we must look to Virginia law.

### Virginia's Recordation Statute

Under section 55-96 of the Virginia Code, every deed of trust or mortgage is "void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record … ." Virginia is a race notice

jurisdiction; meaning, generally, the first creditor to record its interest has priority over others

who record or purchase thereafter. It is undisputed that Defendant has failed to record its interest

in Debtors' real property, as exhibited by the 2007 DoT.[10]

Under 11 U.S.C. § 544(a)(3), the Trustee is able to step into the shoes of a *bona fide*

purchaser of real estate – a purchaser for valuable consideration without notice. The trustee's

rights as a *bona fide* purchaser under section 544(a) are limited to those rights he or she would

have under applicable state law; no more and no less. *Havee*, 775 F.2d at 1218-19. As such, the

question we must answer is whether the Trustee may step in front of, and avoid entirely,

Defendant's unrecorded interest in Debtors' real estate under applicable Virginia law.

Bona Fide *Purchaser of Real Estate under Section 544(a)(3)*

A *bona fide* purchaser of real estate is an individual who purchases real estate from

another for value and without notice of an objecting creditor's adverse claim to an interest in the

property. *See* VA. CODE ANN. § 55-96; *Neff v. Edwards*, 139 S.E. 291, 294 (Va. 1927) ("A *bona*

*fide* purchaser, - that is, one who, without such knowledge or notice, actual or constructive, and

who has not been put on such inquiry as would lead to knowledge or notice, and has paid the

consideration …"). As a hypothetical, *bona fide* purchaser under 544(a)(3), a trustee is statutorily

deemed to have purchased the real estate from the debtor for valuable consideration. The

trustee's rights and powers under section 544(a)(3) are defined by applicable state law. *Havee*,

775 F.2d at 1218 – 19. The trustee, therefore, is deemed to have the same knowledge of the

creditor's interest as would a hypothetical purchaser under state law. Only a purchaser without

knowledge of another's failure to record an instrument may take advantage of the other's failure.

*National Mut. Bldg. & Loan Ass'n v. Blair*, 36 S.E. 513, 515 (Va. 1900). As such, the ability of

the Trustee to avoid Defendant's interest in Debtors' real property rests on what knowledge a

---

[10]        Defendants' Counterclaim and Third-Party Claim at ¶ 16, *In re Perrow*, No. 11-06082, ECF No. 22.

hypothetical purchaser would have under applicable Virginia law of Defendant's interest as of the date of the filing of the bankruptcy petition.

As *Neff* illustrates, there are two forms of notice under Virginia law: actual and constructive. 139 S.E. at 294. In either form, notice focuses on whether the purchaser, at the time of the purchase, had knowledge of the objecting party's interest in the seller's real estate. *See Grayson Lumber Co. v. Young*, 86 S.E. 826, 828 (Va. 1915) (holding that another's adverse interest would not affect a purchaser's interest without notice that the purchased land was encumbered by the other's interest); *Smith v Throne*, 488 F.Supp.2d 534, 547 (E.D. Va. 2007) (applying Virginia law) ("To attain the status of a *bona fide* purchaser for value, a mortgagee must establish that it paid value for its interest in the property without notice of the *plaintiff's* rights.") (citing *Tansome v. Watson's Adm'r*, 134 S.E. 707, 709 (Va. 1926) (emphasis in original and emphasis added, respectively)). Actual notice is "never to be presumed, but must be proved, and proved clearly. A mere suspicion of notice, even though it be a strong suspicion, will not suffice." *Grayson Lumber*, 86 S.E. at 828. The proof of actual notice "must be such as to affect the conscience of the purchaser" and "must be so strong as to fix upon [the purchaser] the imputation of [bad faith]." *Id.*

Under Virginia law, a purchaser is charged with constructive "notice of all the facts appearing [on the face of the title papers under which he buys], or to the knowledge of which anything there appearing will conduct him." *Shaheen v. County of Matthews*, 579 S.E.2d 162, 172 (Va. 2003) (quoting *Burwell's Adm'rs v. Fauber*, 62 Va. (21 Gratt.) 446, 463 (1871)). A purchaser cannot actively avoid acquiring information in order to avoid acquiring notice of an adverse interest in the property he or she is purchasing. *Id.* ("[The purchaser] has no right to shut

his eyes or ears to the inlet of information, and then say he is a bona fide purchaser without notice.")

The purpose of the recordation requirement of Virginia Code section 55-96 is to give constructive notice to purchasers or creditors seeking to acquire some interest or right in another's property. *Shaheen*, 579 S.E. at 171 (citing *Chavis v. Gibbs*, 94 S.E.2d 195, 197 (Va. 1956)). In line with its purpose, deeds properly recorded under section 55-96 constitute "constructive notice to subsequent purchasers, and the titles they take are subject to whatever adverse conveyances or encumbrances they should have discovered in a proper search of the records." *Falson v. Union Camp Corp.*, 294 S.E. 821, 825 (Va. 1982) (citing *Chavis*, 94 S.E.2d 195).

Based on the information before the Court, there is nothing to suggest that a *bona fide* purchaser of Debtors' real property would have had actual notice of Defendant's interest in Debtors' property. Besides Defendants' assertions that Debtors' actual knowledge of the 2007 DoT controls, addressed *supra*, Defendants have provided the Court with no evidence that a hypothetical purchaser would have had knowledge of Defendant's interest and most assuredly no evidence that would fix upon the purchaser an imputation of bad faith. *See Grayson Lumber*, 86 S.E. at 828. Therefore, we find that the Trustee, as a hypothetical purchaser of Debtors' property, would not have had actual notice of Defendant's interest in Debtors' property.

The Trustee, however, is charged with constructive notice of the facts appearing on Debtors' title papers. Under the facts of this case, the Trustee would have purchased Debtors' property under the 2005 deed of gift, under which the male debtor deeded his interest in the subject property to himself and the female debtor as tenants by the entirety.[11] Upon a proper

---

[11]     Defendants' Exhibit A to Defendants' Counterclaim and Third-Party Claim, *In re Perrow*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 22-1.

search of the records, the Trustee would have discovered the recorded 2006 DoT and a

subsequent, recorded release of the 2006 DoT.[12] Furthermore, the 2005 deed of gift references a

2003 deed under which the male debtor acquired his interest in the property.[13] An astute title

searcher would have examined the records pertaining to the 2003 deed and have discovered the

recorded, but unreleased ,2004 DoT on Debtors' real property.[14]

Defendant's 2007 DoT, however, would not have been discovered by a proper search of

the land records. Defendant failed to record the 2007 DoT. Although it is undisputed that the

2007 Loan was used to satisfy the 2006 Loan, which resulted in the recorded release of the 2006

DoT, the recorded release of the 2006 DoT makes no reference to any interest held by

Defendant. [15]

Defendants have alleged[16] that the existence of a release, without a new, accompanying,

recorded deed of trust in favor of a new mortgage creditor "is a 'red flag' and [should] raise a

strong suspicion that there is, in fact, an existing deed of trust that must not have been

---

[12]     Defendants' Exhibit 1 to Defendants' Memorandum in Support of Motion for Summary Judgment, *In re Perrow*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 44-1.

[13]     Defendants' Exhibit B to Defendants' Counterclaim and Third-Party Claim, *In re Perrow*, No. 11-06082, ECF No. 22-1.

[14]     A proper title search would have involved following the chain of title associated with the 2003 deed back through the records to determine if any other adverse interests attached to the property. *HSBC Bank v. Gold (In re Taneja)*, 427 B.R. 109, 120 (Bankr. E.D.Va. 2010) (finding that a purchaser is charged with constructive notice of anything that might be revealed if title was traced back to a general warranty deed recorded at least 60 years prior to the current sale). The Court, however, has no information regarding any interests or encumbrances beyond the 2004 DoT. Since Defendant's interest stems from the 2007 DoT, further examination beyond what the Court has already determined would be uncovered is unnecessary to successfully resolve the issue of constructive notice for purposes of this opinion.

[15]     *See* Defendants' Exhibit 1 to Defendants' Memorandum in Support of Motion for Summary Judgment, *In re Perrow*, No. 11-06082, ECF No. 44-1.

[16]     Defendants' allegation regarding constructive notice appears in its motion for summary judgment on Plaintiffs' Complaint. The Court has already denied summary judgment on this motion. The argument, however, is relevant to this discussion, and, as the Plaintiffs' are the party moving for summary judgment on their Complaint, every inference should be granted in favor of the non-moving party. *News and Observer*, 597 F.3d at 576.

recorded."[17] Defendants argue that such is sufficient to give a purchaser constructive notice of its

interest in Debtors' real property.[18] The Court does not find Defendants' argument to be

persuasive. The court in *HSBC Bank v. Gold* considered a similar, but more persuasive argument

by plaintiff HSBC. In that case, HSBC's properly recorded deed of trust had been improperly

released by another without authority to do so and such release was recorded in the land records.

*HSBC Bank v. Gold*, 427 B.R. 109 (Bankr. E.D. Va. 2010). HSBC argued that a purchaser would

have constructive notice of HSBC's interest because a title search would have revealed that the

property in question had changed hands six times over the course of six months and that twelve

deeds of trust representing loans from the same lender had been properly recorded and released

within the same period. *Id.* at 119. Despite the unusual sequence of events, the Court found that

the nature of the recorded transactions was not suspicious and was certainly not suspicious

enough to put a subsequent purchaser on notice of HSBC's interest. *Id.* at 122. If the recordation

and subsequent release of a deed of trust by the same lender twelve different times in a six month

period is not sufficient to put a subsequent purchaser on notice of a potential interest in the same

property, then there is nothing out of the ordinary with the recorded release of the 2006 DoT

such that a purchaser would have been put on constructive notice of Defendant's interest in

Debtors' real property.

Recordation of the 2007 DoT or reference by the recorded release of the 2006 DoT to

Defendant's interest would have been sufficient to give a purchaser constructive or, alternatively,

inquiry notice of Defendant's interest in Debtors' property. Neither occurred. As such, the

---

[17]    Defendants' Memorandum in Support of Motion for Summary Judgment at p. 17, *In re Perrow*, No. 11-06082, ECF No. 44.

[18]    *Id.*

Trustee, as a hypothetical purchaser, would not have had constructive notice of Defendant's interest in the property as of the filing of the bankruptcy petition.[19]

Defendant failed to record its 2007 DoT in Debtors' real property. As explained above, a purchaser of Debtors' real property would not have had actual or constructive notice of Defendant's interest in the property. If paying valuable consideration for the property, such a purchaser would be a *bona fide* purchaser. As such, under Virginia Code section 55-96, a *bona fide* purchaser of Debtors' property would be entitled to avoid Defendant's unrecorded interest in the property. *Shaheen*, 579 S.E.2d at 172. As section 544(a)(3) grants the Trustee the power of a *bona fide* purchaser and the facts establish that the Trustee qualifies as a *bona fide* purchaser under Virginia law as to Defendant's interest in Debtors' real property, the Trustee is entitled to rely on Virginia Code section 55-96 and avoid Defendant's interest in Debtors' real property under section 544(a)(3), subject to any affirmative defenses that Defendants may invoke to defeat the interest of a *bona fide* purchaser.

Defendant's Equitable Remedies

Having determined that the Trustee may qualify under Virginia Code section 55-96 as a *bona fide* purchaser, the Court must determine whether any of Defendant's alleged equitable remedies, incorporated as affirmative defenses, are sufficient to prevent the Trustee, as a *bona fide* purchaser, from avoiding his interest in Debtors' real property.

---

[19]    As a proper search of the land records would have revealed the recorded 2004 DoT, the Trustee would have constructive notice of any interest held by the 2004 DoT holder and would take Debtors' property subject to any interest held by such party. Such a situation may not be ideal for a purchaser of real property, but such a situation is not unheard of under Virginia law. Purchasers of Virginia real property are permitted to assume or take property subject to a pre-existing mortgage.

Along these lines, Defendant has alleged that its interest in Debtors' property is entitled to be equitably subrogated to the holder of the 2004 DoT. To the extent that equitably subrogating Defendant's interest to the 2004 DoT would affect the Trustee's constructive notice of Defendant's interest, we do not reach that question. Defendant's equitable subrogation claim is addressed *infra*.

*Constructive Trust*

Defendants' Counterclaim alleges that imposition of a constructive trust for the benefit of Defendants is "necessary, equitable, and appropriate" "in order to prevent a fraud or injustice that would otherwise ensue."[20] Before reaching the question of whether imposition of a constructive trust is appropriate under the circumstances, the Court must answer the following: Will imposition of a constructive trust have any effect on the Trustee's ability as a hypothetical *bona fide* purchaser to avoid Defendant's interest in Debtors' property?

Under Virginia law, the imposition of a constructive trust in favor of a creditor is sufficient to protect that creditor's interest from that of a lien creditor, but not a *bona fide* purchaser. *See Enterprise Leasing Co. v. Mepco, Inc. (In re Mepco)*, 276 B.R. 94, 101 (Bankr. E.D. Va. 2001). A constructive trust arises independently of the parties' intentions by operation of law and establishes legal title in the possessor of the property, who possesses such property in trust for the equitable interest holder. *Richardson v. Richardson*, 409 S.E.2d 148 (Va. 1991). A judgment creditor's lien can only attach to the beneficial interest held by the debtor on or subsequent to the entry of the judgment. *Straley v. Esser*, 83 S.E. 1075, 1078 (Va. 1915). Because property held in trust for another vests the holder of the property with only legal title to the property, judgment liens against the holder cannot attach to the property held in trust. *Id.*; *see also Mepco*, 276 B.R. at 101. The equitable interest holder, therefore, will trump any interest of a subsequent judicial lien creditor.

In bankruptcy, section 544(a)(1) grants a trustee the rights and powers of a hypothetical judicial lien creditor with a perfected interest as of the filing of the petition. A trustee in bankruptcy relying on section 544(a)(1) cannot have any greater power or rights than a judicial lien creditor under state law. *Havee*, 775 F.2d at 1218-19. If a constructive trust was imposed or

---

[20]     Defendants' Counterclaim and Third-Party Claim at ¶ 38, *In re Perrow*, No. 11-06082, ECF No. 22.

recognized in favor of Defendant, Virginia law would prevent the Trustee from avoiding

Defendant's interest in Debtors' property because Debtors would not have had an equitable

interest in the property as of the filing of the bankruptcy petition to which the Trustee's interest

could attach. Without an equitable interest in the property, the Trustee's interest as a judicial lien

creditor would be inferior to those of Defendant.

The situation, however, is different when a trustee claims an interest as a *bona fide*

purchaser under section 544(a)(3). It is well settled under Virginia law that a *bona fide* purchaser

of property takes such property free of any latent equity against it. *HSBC Bank*, 427 B.R. at 116

(citing cases). It is equally well settled that the existence of a constructive trust is such a latent

equity against property. *Id.* at 122; *see also Carter v. Allan*, 62 Va. 241, 249 (1871) (holding "it

has been the uniform course of decision in [Virginia], as well as in the other States of the Union,

to hold that the *bona fide* purchaser of a legal title is not affected by a latent equity founded on a

trust, fraud or incumbrance, or otherwise, of which he had not notice, actual or constructive.").

Thus, a trustee relying on his powers as a *bona fide* purchaser under section 544(a)(3) takes the

property free of any latent equity, including property subject to a constructive trust.

A trustee is permitted to bring property subject to a constructive trust into the estate for

the benefit of unsecured creditors under section 544(a)(3) despite the fact that such property is

not property of the estate under section 541(d). Under section 541(d), when the debtor holds only

legal title in property, it is property of the estate only to the extent of debtor's legal title. 11

U.S.C. § 541(d). The equitable interest does not become property of the estate. *Id.* As discussed

above, the imposition of a constructive trust on property held by a debtor would vest only legal,

not equitable title in the debtor. *See Richardson*, 409 S.E.2d 148. Section 541(d), however,

applies only to property coming into the estate through sections 541(a)(1) and (a)(2). *Wells*

*Fargo Funding v. Gold*, 432 B.R. 216, 221 (E.D. Va. 2009). Section 541(d) has no effect on a

trustee's ability to void a creditor's equitable interest in property and bring such interest into the

estate under section 544(a)(3) for the benefit of unsecured creditors. *Id.*

As a *bona fide* purchaser of real property under section 544(a)(3), the trustee's ability to

rely on his or her strong arm powers to bring property into the estate as a *bona fide* purchaser of

such property is not defeated by the imposition of a constructive trust. *HSBC Bank*, 427 B.R. at

122; *Wells Fargo Funding*, 432 B.R. at 221 (upholding bankruptcy court's determination that

trustee's avoidance power under section 544(a)(3) would trump creditor's rights under the

imposition of a constructive trust). Because we have already determined that the Trustee

qualifies as a *bona fide* purchaser and that a constructive trust will not prevent a *bona fide*

purchaser from voiding a creditor's equitable interest in property held in trust, we do not need to

reach the question of whether a constructive trust should be imposed on Debtors' real property

for the benefit of Defendant. *Wells Fargo Funding*, 432 B.R. at 221 (upholding bankruptcy

court's refusal to reach the issue of imposing a constructive trust because the trustee could defeat

such a claim under section 544(a)(3)). Regardless of the outcome of that inquiry, Plaintiffs still

would be entitled to judgment as a matter of law as a *bona fide* purchaser of real property.

### Imposition of an Equitable Lien

Defendants have requested that this Court impose and establish, as of May 15, 2007, an

equitable lien on Debtors' real property for Defendant's benefit.[21] As with the Court's analysis of

Defendant's constructive trust affirmative defense, the Court need not determine whether

Defendant is entitled to an equitable lien on Debtors' property, unless such relief would defeat

the Trustee's rights and powers as a *bona fide* purchaser.

---

[21]   Defendants' Counterclaim and Third-Party Claim at ¶ 42, *In re Perrow*, No. 11-06082, ECF No. 22.

Under Virginia law, an equitable lien exists where an "express executor agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, … a security for a debt or other obligation … ." *Hoffman v. First Nat. Bank of Boston*, 135 S.E.2d 818, 821 – 22 (Va. 1964). The lien created is enforceable against the property. *Id*. at 822. As the Court has already addressed, under Virginia law, a *bona fide* purchaser of property takes such property free of any latent equity against it. *HSBC Bank*, 427 B.R. at 116 (citing cases); *see also Carter*, 62 Va. at 249 (holding "it has been the uniform course of decision in [Virginia], as well as in the other States of the Union, to hold that the *bona fide* purchaser of a legal title is not affected by a latent equity founded on a trust, fraud or incumbrance, or otherwise, of which he had not notice, actual or constructive."). The recognition of an equitable lien is an equitable remedy in which an encumbrance is imposed on certain real property in the name of equitable considerations. Thus, a trustee, as a *bona fide* purchaser under section 544(a)(3), takes the property free of any latent equity, including property subject to an equitable lien.

Based on the foregoing, there is no need to reach the question of whether an equitable lien should be imposed in favor of Defendant's. The Court has already determined that the Trustee qualifies as a *bona fide* purchaser under Virginia law. Imposition or recognition of an equitable lien would create or recognize a latent equity on Debtors' real property.  The Trustee, as a *bona fide* purchaser, would be permitted to avoid the equitable interest created by an equitable lien on the property. As such, we do not need to reach the question of whether a constructive trust should be imposed on Debtors' real property for the benefit of Defendant because regardless of the outcome, Plaintiffs would be entitled to judgment as a matter of law. *Wells Fargo Funding*, 432 B.R. at 221 (upholding bankruptcy court's refusal to reach the issue

of imposing a constructive trust because the trustee could defeat such a claim under section

544(a)(3)).

*Specific Performance to Reform Deed of Trust*

Count III of Defendants' Counterclaim asks this Court to grant specific performance of a

provision contained in a "Document Correction Agreement," for which the Debtors signed in

conjunction with the 2007 Loan.[22] That provision provides, in part:

> … If any document is lost, misplaced, misstated, inaccurately reflects the true and
> correct conditions of the [2007 Loan], or otherwise missing upon request of the
> [Defendant], [Debtors] will comply with [Defendant's] request to execute,
> acknowledge, initial and deliver to [Defendant] any documentation [Defendant]
> deems necessary to replace or correct the lost, misplaced, misstated, inaccurate or
> otherwise missing document(s) … [Debtors] agrees to deliver the Documents
> within ten (10) days after receipt by [Debtors] of a written request for such
> replacement.[23]

In light of this provision, Defendant alleges that equity and justice dictate that the Court order

Debtors to execute any and all "documents necessary to effectuate the legal transfer of the

Property, in trust, for the benefit of the [Defendants] to secure the [2007 Loan]."[24] To effectuate

the legal transfer in trust, Defendants request this Court to require Debtors to execute a

replacement deed of trust or, in the alternative, to appoint a Special Commissioner to execute a

replacement deed of trust.[25] Defendants have cited three Virginia cases in support of their request

for specific performance of the "Document Correction Agreement."[26]

---

[22]     Defendants' Counterclaim and Third-Party Claim at ¶ 32, *In re Perrow*, No. 11-06082, ECF No. 22.

[23]     Defendants' Memorandum in Support of Defendants and Counterclaim Plaintiffs' Supplemental Motion for
Summary Judgment as to Counts II through VI of Counterclaim and Third Party Claim at p. 12, *Beskin v. Bank of
New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 48.

[24]     Defendants' Counterclaim and Third-Party Claim at ¶ 32, *In re Perrow*, No. 11-06082, ECF No. 22.

[25]     *Id.*

[26]     *See* Defendants' Memorandum in Support of Supplemental Motion for Summary Judgment at p. 13, *In re
Perrow*, No. 11-06082, ECF No. 48.

The Court need not determine if Defendants are entitled to judgment as a matter of law on their request for specific performance of the "Document Correction Agreement." Even if the Court ordered specific performance of the "Document Correction Agreement," such relief would not defeat the Trustee's rights as a *bona fide* purchaser of Debtors' property. *Wells Fargo Funding*, 432 B.R. at 221 (upholding bankruptcy court's refusal to reach the issue of imposing a constructive trust because the trustee could defeat such a claim under section 544(a)(3)).

As we have stated previously, a *bona fide* purchaser of property takes such property free of any latent equity against it, so long as he purchases without notice of such equity. *HSBC Bank*, 427 B.R. at 116 (citing cases); *Carter*, 62 Va. at 249. Under the "Document Correction Agreement," the re-execution of the 2007 DoT would grant Defendant a valid and enforceable interest in Debtors property as against the Debtors. However, under Virginia law, recordation of an interest in real property is required to perfect one's interest in real property as against other creditors and purchasers of the debtor. VA. CODE ANN. § 55-96 (West 2013).

Re-execution of the 2007 DoT will not help Defendants succeed against a *bona fide* purchaser; only a prior recordation of its interest or a finding of notice would allow Defendant to succeed against a *bona fide* purchaser. In conjunction with their request for specific performance of the "Document Correction Agreement," Defendants contend that "equity and the ends of justice further require that this Court enter an order authorizing [Defendants] to record the replacement version of the [2007 DoT]."[27] Defendants, however, have cited no authority for such a remedy and have failed to brief the issue for the Court.[28] Defendants have based this request

---

[27]     Defendants' Counterclaim and Third-Party Claim at ¶ 34, *In re Perrow*, No. 11-06082, ECF No. 22.

[28]     *See* Defendants' Memorandum in Support of Supplemental Motion for Summary Judgment, *In re Perrow*, No. 11-06082, ECF No. 48.

entirely on equity and justice.[29] Such considerations, however, do not support Defendants' position; rather, they support a finding in favor of Plaintiffs.

In *In re Ware*, the Bankruptcy Court for the Eastern District of Virginia considered a creditor's request to retroactively reform a defective deed of trust to place its interest in debtor's property ahead of that of other creditors and the Chapter 7 trustee. The Court ultimately concluded that the trustee could avoid the creditor's interest under sections 547 and 550, but not section 544(a)(3) because of a pending *lis pendens* action that was filed in state court prior to the filing of the bankruptcy petition. *In re Ware*, 2013 WL 1163953, *7 (Bankr. E.D. Va. 2013). No *lis pendens* suit was filed in this case and, as that was the sole grounds for denying the trustee's powers under section 544 and Virginia Code section 55-96, the Court finds the reasoning of *Ware* to be persuasive in this case. The court in *Ware* started with the principle that reformation of a deed of trust is an equitable remedy. *Id*. at *6. From that principle, the Court found that in any equitable ruling, the rights of intervening parties without notice are protected under Virginia's recording statute. *Id.* In *Ware*, as is the case here, the intervening party was the trustee. *Id.* The court found that allowing the creditor to retroactively reform its recorded deed of trust to place it ahead of the trustee would be improper. *Id.* In coming to its conclusion, the court determined that placing a creditor who recorded a defective deed of trust ahead of intervening interests would not only violate the equitable nature of reformation of a deed, but also violate the Code's distribution system and the powers explicitly granted the trustee in such actions. *Id.*

In this case, Defendants are not asking to reform a recorded, but defective, deed of trust, as was the case in *Ware*; rather, Defendants are requesting that we allow them to record an interest that they have slept on for approximately six years. Such a request is even greater than that requested by the creditor in *Ware*, and the Court finds that such a request is contrary to the

---

[29]        *Id.*

24

purpose and structure of the Code, as well as Virginia's recordation statute. To the extent

necessary, Plaintiffs, not Defendants, are entitled to judgment as a matter of law on this issue.

*See* FED. R. CIV. P. 56(f)(1) (adopted by FED. R. BANKR. P. 7056). Furthermore, Defendants have

not addressed the issue of the automatic stay, which would prevent Defendants from recording a

deed of trust on Debtors' real property in the event that the Court even entertained such a

request.

It is undisputed that Defendant did not record its 2007 DoT. Furthermore, the Court has

determined that Defendants' request to record its interest in Count III is without merit. Lastly,

the Court previously determined that the Trustee, acting as a *bona fide* purchaser of real property

under Virginia law, would not have had notice of Defendant's interest in Debtors' real property.

Without a finding to the contrary on one of these three factors, re-execution of the 2007 DoT

would not defeat the Trustee's ability as a *bona fide* purchaser to avoid Defendant's unrecorded

interest in Debtors' property, regardless of whether that interest was established by the actual

2007 DoT or a re-executed version. As such, we need not reach the question of whether specific

performance of the "Document Correction Agreement" is appropriate in this case. *Wells Fargo*

*Funding*, 432 B.R. at 221 (upholding bankruptcy court's refusal to reach the issue of an equitable

remedy because the trustee could defeat such a claim under section 544(a)(3)).

*Equitable Subrogation*

In response to Plaintiffs' Complaint, Defendants have asserted that their interest is

entitled to be equitably subrogated to the position of the 2006 DoT and/or the 2004 DoT.[30] While

the doctrine of equitable subrogation has long been established under Virginia law, the Court has

been unable to find any case law in which the doctrine has been juxtaposed with the rights of a

*bona fide* purchaser of real property. As such, the issue appears to be an issue of first impression

---

[30]     Defendants' Counterclaim and Third-Party Claim at ¶ 29, *In re Perrow*, No. 11-06082, ECF No. 22.

and this Court must determine whether Virginia law would allow a secret creditor to be equitably subrogated to the rights of a previous creditor to the detriment of a *bona fide* purchaser of property. If Virginia law would not allow such a situation to occur, then we need not reach the question of whether Defendants are entitled to be equitably subrogated to the rights of the 2006 DoT and/or the 2004 DoT because, regardless, such treatment would not defeat the Trustee's rights as a *bona fide* purchaser of Debtors' real property.

In determining this issue, the Court starts with the basic principle that under Virginia law a *bona fide* purchaser of property takes such property free of any latent equity against it. *HSBC Bank*, 427 B.R. at 116 (citing cases). This principle is broad enough to cover any "latent equity founded on a trust, fraud or incumbrance, or otherwise, of which he had not notice, actual or constructive." *Carter*, 62 Va. at 249. Subrogation is a remedy which allows one creditor to step into the shoes of another creditor through the payment of the debt owed the other creditor. *Federal Land Bank v. Joynes*, 179 Va. 394, 401 (1942). It is a purely equitable remedy "founded upon principles of natural justice," not contract or privity. *Id.*; *see also Gatewood v. Gatewood*, 75 Va. 407, 411 (1881); *Morgan v. Gollehon*, 153 Va. 246, 248 – 49 (1929). Under the doctrine, "although the debt is paid and satisfied, a court of equity will keep alive the lien for the benefit of the party who made the payment, provided he as security for the debt, 'has such an interest in the land' as entitled him to the benefit of the security given for its payment." *Gatewood*, 75 Va. at 411 (quotations in original). Subrogation is, therefore, an equitable remedy that keeps alive an encumbrance on real property that would otherwise not exist for the benefit of one who satisfies the debt underlying such an encumbrance. In the words of the *Carter* court, equitable subrogation is a "latent equity founded on a[n] … incumbrance, or otherwise." 62 Va. at 249. Because a *bona fide* purchaser takes property free of latent equities founded on encumbrances or

otherwise and equitable subrogation creates a latent equitable encumbrance on real property, a

*bona fide* purchaser of real property would take the property free of any interest created or

revived by the doctrine of equitable subrogation. Regardless of whether Defendants are entitled

to equitable subrogation as a matter of law, their interest in Debtors' real property would still be

voidable by the Trustee acting as a *bona fide* purchaser of real property under section 544(a)(3).

As such, the Court need not reach that question. *Wells Fargo Funding*, 432 B.R. at 221

(upholding bankruptcy court's refusal to reach the issue of an equitable remedy because the

trustee could defeat such a claim under section 544(a)(3)).

      If, in the alternative, the rights of a creditor established through the doctrine of equitable

subrogation could defeat the rights of a *bona fide* purchaser, the Court would need to address the

question of whether Defendants are entitled to equitable subrogation under the facts of this case.

The question of whether to grant equitable subrogation is necessarily a fact intensive inquiry and,

as such, is governed by general principles of law rather than bright line rules. *Centreville Car

Care, Inc. v. North American Mortg. Co.*, 263 Va. 339, 345 (2002). Virginia recognizes two

general principles that guide our inquiry: "First, subrogation is not appropriate where intervening

equities are prejudiced. Second, ordinary negligence of the subrogee does not bar the application

of subrogation where an examination of the facts shows that the equities *strongly favor* the

subrogee." *Id.* (citing cases) (emphasis in original) (internal quotations omitted). In addition to

these principles, Virginia recognizes that "subrogation is generally allowed where the loan was

made by one who took a security from the borrower which turned out to be invalid." *Morgan*,

153 Va. at 250. At its heart, the doctrine of equitable subrogation is concerned with restoring the

interests of the parties to their intended position relative to others. *See Joynes*, 179 Va. at 401 –

02. The doctrine, however, is not concerned with the creation of rights not created prior to trial.

Such a remedy would undermine the intent of the legislature in enacting Virginia Code section 55-96.

There is a difference, in equity, if not also in law, between an invalid security interest in real property and a security interest in real property that a creditor failed to perfect. Equitable subrogation is concerned with the former, but not the latter. *Compare Mayer v. U.S. (In re Reasonover)*, 236 B.R. 219 (Bankr. E.D. Va. 1999) (finding that creditor taking under a broken chain of title was entitled to be equitably subrogated to the position of the entity paid with its funds); *First Community Bank v. E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.)*, 2009 WL 2211727 (Bankr. E.D. Va. 2009) (finding that creditor, who took a deed of trust from an individual without ownership rights in the property, was entitled to be equitably subrogated to the rights of the entity paid with its funds) *with Centerville*, 559 S.E.2d 870 (finding that creditor, who took under a valid deed of trust, but failed to discover an existing second deed of trust, was not entitled to be equitably subrogated to the position of the first deed of trust holder); *Deutche Bank National Trust Comp. v. IRS*, 361 Fed.Appx. 527 (4th Cir. 2010) (finding that creditor, who was the last in a chain of assignments of a valid deed of trust, but was unaware of existing liens on the deeded property, was not entitled to be equitably subrogated above the secret liens because creditor's loan was greater than the amount of the loan paid). In the present action, Defendant had a valid and enforceable interest in Debtors' real property. There is no question that Debtors were the owners of the property with the rights and powers capable of granting Defendant an interest in the property. Furthermore, there are no issues regarding the enforceability of the 2007 DoT as against the property, held by the Debtors as tenants by the entirety, because it is undisputed that both Mr. and Mrs. Perrow signed the 2007 Refinancing

Loan and the 2007 DoT.[31] As such, there is no question as to the validity of the interest held by

Defendant.

What is at issue in this case is Defendant's failure to record the 2007 DoT, which under

Virginia Code section 55-96 is required to perfect the interest in Debtors' real property against

intervening interest holders. Equitable subrogation is not appropriate in such circumstances. To

hold otherwise would prejudice intervening equities under a guise of equity when state law

dictates that such intervening equities are entitled to take free. *See* VA. CODE ANN. § 55-96 (West

2013). Such a conclusion would be directly contrary to the first guiding principle of equitable

subrogation. *Centreville Car Care*, 263 Va. at 345.

Furthermore, to allow a creditor to perfect its already valid interest through equitable

subrogation would reward a creditor's negligence to the detriment of others. While negligence on

the part of the party seeking subrogation is not an absolute bar, it is a factor to be considered and

should only be overlooked when the balance of equities strongly favors the negligent party. *Id*. In

cases where negligent creditors have been allowed equitable subrogation, the creditors took the

steps necessary to properly perfect their interest, only to realize that such interest was invalid,

generally because of a failure by the title search company to discover a break in the chain of title.

*Reasonover*, 236 B.R. 219; *E.M. Williams & Sons*, 2009 WL 2211727. In those cases, unlike

here, the creditors did not sleep on their rights; rather, they were surprised to learn that their

rights were not what they believed them to be. *Id.* As such, those cases contained facts strongly

favoring overlooking the negligent failure to discover a break in the chain of title. No such facts

exist in this case. Defendant had everything it needed to perfect its interest in 2007. The fact that

it failed to properly record its 2007 DoT; that the 2007 DoT is now lost, misplaced, or destroyed;

and that Defendant now stands to lose a sum of money does not shift the balance of equity in its

---

[31]    Plaintiffs' Amended Complaint at ¶ 5, *In re Perrow*, No. 11-06082, ECF No. 18.

favor, let alone strongly in its favor. Every unsecured creditor in bankruptcy stands to lose a sum

of money. Based on the foregoing, Defendant would not be entitled under the facts of this case to

equitable subrogation to either the 2006 DoT or the 2004 DoT. If the Court were forced to

address this question, Plaintiffs, not Defendants, would be entitled to judgment as a matter of law

on count III of Defendants' Counterclaim. FED. R. CIV. P. 56(f)(1) (made applicable by FED. R.

BANKR. P. 7056) (granting the Court authority to grant summary judgment for the nonmovant).

*Equitable Relief under 11 U.S.C. § 105*

Defendants have suggested that as a court of equity, this Court should follow the maxim

that "equity regards as done that which ought to be done" and enter an order pursuant to section

105 of the Code establishing that Defendant's 2007 DoT is "a valid *first*-priority lien on the

Property, superior to any other consensual and nonconsensual liens on the Property."[32] In support

of this position, Defendants cite *Stokes v. Firestone*, 198 B.R. 168 (E.D. Va. 1996), in which the

District Court for the Eastern District of Virginia upheld the bankruptcy court's reliance on

section 105 in ordering specific performance of a settlement agreement between the debtor and

another for the conveyance of real property. In *Stokes*, the debtor entered into the settlement

agreement in resolution of an adversary proceeding before the bankruptcy court, and the

agreement was the basis for the court's approval of debtor's plan of reorganization. *Stokes*, 198

B.R. at 175. Approval of the settlement agreement and the debtor's plan of reorganization

involve orders issued by the court. Under section 105(a), the bankruptcy court "may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." The difference between the court's decision in *Stokes* to order specific performance under

section 105 and Defendants' request for relief in this case is that in *Stokes*, court orders would

---

[32]     Defendants' Counterclaim and Third-Party Claim at ¶ 45, *In re Perrow*, No. 11-06082, ECF No. 22
(emphasis in original).

have been disregarded, but for an order directing the debtor to act in a particular way. The court in *Stokes* used section 105 to ensure that the order confirming debtor's plan of reorganization was given effect. No such situation exists in this case.

Furthermore, granting Defendants relief under section 105(a) in this case is contrary to the purpose of that provision. Under section 105(a), the Court is granted authority to enter orders necessary or appropriate to carry out the provisions of the Code. As we have already said, allowing Defendant to perfect its interest against the rest of the world now would run counter to the Code's distribution system and the strong arm powers explicitly granted a trustee for situations just like this. *Ware* at *6. As such, there is no court order to effectuate, and judgment in favor of the Defendant, in this case, would be contrary to the purpose of the Code. Relief under section 105 is not appropriate in this case. Count six of Defendant's counterclaim is, therefore, denied summary judgment and cannot form the basis of an affirmative defense to Plaintiffs' Complaint.

## Plaintiffs' Motion for Summary Judgment

Plaintiffs' motion for summary judgment seeks determination as a matter of law that they are entitled to judgment on their Complaint.[33] The Court will consider the Complaint's counts in turn.

Counts I and II of Plaintiffs' Complaint request this Court determine that the unrecorded 2007 DoT is void and that Defendants are without an interest in Debtors' real property, respectively. Previously in this opinion, the Court has determined that the Trustee qualifies as a *bona fide* purchaser of real property under Virginia law. As a *bona fide* purchaser of real property, the Trustee is granted the power under section 544(a)(3) to void any interests that such

---

[33]     Plaintiffs' Motion for Summary Judgment at ¶ 1, *Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 45.

a person would be entitled to avoid under applicable state law. Under applicable Virginia law, a *bona fide* purchaser takes the purchased property free and clear of any unnoticed adverse interest in the property. VA. CODE ANN. § 55-96 (West 2013). Defendant's unrecorded 2007 DoT is such an unnoticed adverse interest. Furthermore, the Court has determined that equitable defenses raised by Defendants' supplemental motion for summary judgment are insufficient to defeat a *bona fide* purchaser's interest or are not available to Defendants under the facts of this case as a matter of law. Lastly, the only remaining defense raised by Defendants' Counterclaim is count I, which seeks declaration and determination that an interest and lien existed against Debtors' property as of May 15, 2007. Defendants' requested relief confuses the issue in this case. As stated previously, Defendant had a valid and enforceable interest against the Debtors and their property upon the execution of the 2007 DoT. The fact remains, however, that Virginia requires recordation to perfect one's interest in real property as against the world. Defendant failed to record. Without recordation, the relief sought in Counterclaim count I would be insufficient to defeat the Trustee's interests as a *bona fide* purchaser. Defendants' count I is not a valid affirmative defense to Plaintiffs' motion. Therefore, the Trustee, as a *bona fide* purchaser under section 544(a)(3), is entitled to void Defendant's unrecorded 2007 DoT, which has the effect of removing Defendant's interest and lien in Debtors' real property as of the petition date. Plaintiffs' request for summary judgment on counts I and II of their Complaint are hereby granted.

Based on the Court's determination that Defendant is without an interest in Debtors' real property as of the date of the bankruptcy filing, Defendant is an unsecured creditor. As an unsecured creditor, Defendant was required to file a proof of claim within ninety (90) days after the first date set for the meeting of creditors under section 341(a). FED. R. BANKR. P. 3002(a). In

Debtors' bankruptcy case, the first 341(a) meeting was scheduled for May 19, 2009, and the

deadline for filing unsecured claims was August 17, 2009. *See In re Perrow*, No. 09-61234

(Bankr. W.D. Va. Apr. 22, 2009). Defendant, however, filed its proof of claim on September 24,

2009, approximately thirty-eight days after the deadline for filing claims. As such, Defendant's

claim was not timely filed.

Under section 502(a), a claim filed is deemed allowed, unless a party in interest objects.

Count III of Plaintiffs' Complaint has objected to the timeliness of Defendant's claim and seeks

disallowance of that claim.[34] Upon such an objection, section 502(b) dictates that the Court shall

determine the amount of the claim as of the date of the filing of the petition. Section 502(b)(9)

states, however, that the court is not permitted to allow a claim to the extent that "proof of such

claim is not timely filed." None of the exceptions provided by sections 726(a)(1), (2), or (3)

apply in this case. *See* 11 U.S.C. § 502(b)(9). As such, Defendant's claim cannot be allowed. *In

re Nwonwu*, 362 B.R. 705, 707 (Bankr. E.D. Va. 2007) ("The claims bar date, moreover, may not

be extended under the court's general power to extend deadlines but only as specifically

provided in Rule 3002(c)."). Plaintiffs are entitled to summary judgment on count III of the

Complaint.[35]

---

[34]        Plaintiffs' Amended Complaint, *In re Perrow*, No. 11-06082, ECF No. 18.

[35]        A footnote in Defendants' Memorandum asks this Court to withhold ruling on count III of Plaintiffs'
Complaint. Defendants' Memorandum in Support of Defendants and Counterclaim Plaintiffs' Supplemental Motion
for Summary Judgment as to Counts II through VI of Counterclaim and Third Party Claim at p. 5 n.1, *Beskin v.
Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 48.
Defendants represented that this request was on behalf of the parties. *Id.* While we have no reason to doubt
Defendants' representations, Plaintiffs filed a motion for summary judgment on all counts of their Complaint. *See*
Plaintiffs' Motion for Summary Judgment at ¶ 1, *Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-
06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No. 45 ("Plaintiffs move for summary judgment on their complaint
…"); *See* Plaintiffs' Memorandum in Support of Trustee and Debtors' Motion for Summary Judgment at p. 4,
*Beskin v. Bank of New York Mellon, et. al. (In re Perrow)*, No. 11-06082 (Bankr. W.D. Va. Aug. 15, 2011) ECF No.
46 ("[The parties] respectfully request that the Court grant them summary judgment on their complaint …").
Plaintiffs have filed no motions amending their motion for summary judgment; nor have Plaintiffs filed anything
else with the Court requesting deferral of a ruling as to count III. This matter is currently and properly before the

## CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motions for summary

judgment are denied and Plaintiffs' motion for summary judgment is granted in its entirety. The

Court will issue a corresponding order consistent with the findings in this opinion. Copies of this

memorandum opinion are directed to be sent to the Chapter 13 Trustee; the Debtors; counsel for

the Debtors; Defendants; and counsel for Defendants.

Date: September 5, 2013                    Rebecca B. Connelly
                                           U. S. Bankruptcy Judge

---

Court on a motion for summary judgment. There are no issues of material fact in dispute, and it is appropriate to rule
on this matter at this time.